# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 06-CV-3298 (JFB) (ETB)

————————————

GENEVIEVE DREES,

Plaintiff,

VERSUS

THE COUNTY OF SUFFOLK, SERGEANT CARPARELLI, SERGEANT DACUK, SERGEANT EBLE, CAPTAIN JOHN HANLEY AND SERGEANT WILLIAM TODODRO, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

————————————

MEMORANDUM AND ORDER
June 27, 2007

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Genevieve Drees brings this employment discrimination action alleging a hostile work environment and retaliation on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*, New York State Executive Law §§ 290 *et seq.* and the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 against defendants the County of Suffolk, Sergeant Carparelli, Sergeant Dacuk, Sergeant Eble, Captain John Hanley and Sergeant William Todoro (collectively, "defendants").

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth herein, defendants' motions are granted in part and denied in part.

## I. BACKGROUND

### A. Facts

The following facts are taken from the amended complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Genevieve Drees ("Drees") joined the Suffolk County Police Department ("SCPD") on March 25, 1991, as a dispatcher. (Am. Compl. ¶ 13.) From 1991 through 1996, male SCPD sergeants and officers, including

Sergeant William Todoro ("Sgt. Todoro"), Sergeant Carparelli ("Sgt. Carparelli"), Sergeant John Hanley ("Sgt. Hanley"), Sergeant Edward Sheridan ("Sgt. Sheridan") and Sergeant James Barruso[1] ("Sgt. Barruso") allegedly made sexual comments to Drees and her female coworkers. (*Id.* ¶ 14.) Male sergeants and officers also allegedly touched Drees in an unwelcomed sexual manner. (*Id.* ¶ 15.) According to Drees, approximately twice each month, male SCPD sergeants and officers rubbed Drees' thigh, causing her to pull away. (*Id.*) On a daily basis, Sgt. Carparelli, Sgt. Todoro, Sgt. Randy and Sgt. Sheridan allegedly rubbed Drees' back and shoulders while attempting to look down her blouse. (*Id.*) Drees asserts that, on one occasion, Sgt. Sheridan attempted to pull Drees into a computer room and kiss her. (*Id.*) Drees refused, and ran out of the room. (*Id.*)

In addition, on several occasions, male sergeants and police officers allegedly followed Drees to her car and attempted to convince her to leave with them to engage in sexual relations. (*Id.* ¶ 16.) Drees always refused these advances. (*Id.*) Drees also learned that SCPD sergeants had allegedly placed bets on who would have sexual intercourse with Drees first. (*Id.* ¶ 17.) According to Drees, in March 1996, Sgt. Todoro accidentally broadcast over the dispatch radio comments intended for only Drees to hear, including "[d]o you taste as good as you look tonight?" and "[y]ou are looking really good tonight." (*Id.* ¶ 18.) After hearing the comments, another officer contacted Drees and asked her whether Sgt. Todoro had actually made the comments.

(*Id.*) The following night, Drees told Sgt. Carparelli and Sgt. Todoro that their advances and comments were unwelcome, and stated that she would file a written sexual harassment complaint if they refused to cease their actions. (*Id.* ¶ 19.) The two sergeants ordered Drees out of the office. (*Id.*) Thereafter, the sexual comments and actions ceased. (*Id.* ¶ 20.)

The day after Drees complained to Sgt. Carparelli and Sgt. Todoro, she was reassigned from primary radio to data radio. (*Id.*) When Drees complained about her change in assignments, she was allegedly told "to keep her complaints to herself and see what happens." (*Id.*) According to Drees, shortly thereafter, Sgt. Carparelli and Sgt. Eble told Drees that they were unhappy with the fact that she was thinking about filing a written sexual harassment complaint, and that Drees would regret doing so. (*Id.* ¶ 21.) From 1996 through 1997, the SCPD began complaining about Drees' work performance and Drees' work assignments were regularly changed. (*Id.* ¶ 22a-b.) Drees also received verbal reprimands which, she believes, were unsupported. (*Id.* ¶ 22c.) The SCPD also allegedly assigned Drees to use equipment that she was not trained to use. (*Id.* ¶ 22d.)

In 1997, Drees complained to Lieutenant Alice O'Callaghan ("Lt. O'Callaghan") about the sexual comments, changes in her work assignments, and complaints and verbal reprimands about Drees' performance. (*Id.* ¶ 23.) Lt. O'Callaghan allegedly discouraged Drees from filing a written complaint, stating that the SCPD was a "good old boys' club," that Drees' claims would be difficult to prove, and that her problems on the job would only increase as a result. (*Id.*) Following her conversation with Lt. O'Callaghan, several SCPD supervisors, including Captain Kenneth

---

[1] Sergeants Sheridan and Barruso are not parties to the instant action.

Marco, Sgt. Sheridan and Sgt. Todoro asked Drees whether they planned to file a written discrimination complaint. (*Id.* ¶ 24.) At some point, Sgt. Hanley, Sgt. Todoro and Sgt. Carparelli were transferred out of Drees' precinct. (*Id.* ¶ 25.)

In December 1997, Drees received her first written reprimand from the SCPD, which she believed was unwarranted. (*Id.*) In December 1998, Sgt. Eble issued a written reprimand to Drees for several calls that were allegedly mishandled. (*Id.* ¶ 26.) According to Drees, she had not mishandled any of the calls, and all of the complaints were dropped except for one. (*Id.*) Sgt. Eble allegedly insisted upon issuing a written reprimand for one of the calls despite the fact that another SCPD employee, Sgt. Pagano, agreed with Drees that she had handled the call appropriately. (*Id.*)

In late 2001, Sgt. Hanley, who had been promoted to lieutenant, was transferred back to Drees' precinct. (*Id.* ¶ 27.) On May 14, 2002, Lieutenant Hanley (hereinafter "Lt. Hanley") allegedly berated Drees in front of several supervisors, accusing her of using her "comp time"[2] inappropriately as part of her bereavement leave following her father-in-law's death. (*Id.* ¶ 28.) When Drees denied misusing any of her comp time, Lt. Hanley called her a "liar" and stated: "I have got you now. When I am through with you, you will not get a job at McDonald's." (*Id.*) A review of Drees' requests for bereavement leave revealed that she had not misused her comp time. (*Id.*) In July 2002, Lt. Hanley was promoted to Captain and was transferred out of Drees' precinct. (*Id.* ¶ 29.)

On July 1, 2004, Captain Hanley (hereinafter "Cpt. Hanley") visited Drees' precinct and spoke with Sgt. Dacuk and Lieutenant Mark Fischer ("Lt. Fischer"). (*Id.* ¶ 30.) According to Drees, Sgt. Dacuk was one of Drees' supervisors and had only worked in the department for six months at that time. (*Id.*) Drees asserts that Lt. Fischer was Sgt. Dacuk's close friend. (*Id.*) Prior to his conversation with Cpt. Hanley, Sgt. Dacuk had been friendly with Drees and had commended her work performance. (*Id.* ¶ 31.) Following his conversation with Cpt. Hanley, Sgt. Dacuk stopped speaking to Drees altogether. (*Id.*) On July 19, 2004, Sgt. Dacuk verbally reprimanded Drees for the first time regarding one of her calls. (*Id.* ¶ 32.) Although no problems were found with respect to the call, Sgt. Dacuk warned Drees that he would be checking her work very closely. (*Id.*)

On August 12, 2004, Sgt. Dacuk, Sergeant Munson, Sergeant Smith and Ms. Hubner, one of Drees' supervisors, insisted that Drees have a union representative present for a routine interview. (*Id.* ¶ 33.) Later, Drees was informed that the SCPD had believed that the presence of a union representative was necessary because Drees had considered filing a written charge of sexual harassment in 1997. (*Id.*) When Drees complained to her union about the SCPD's actions, she was informed that Sgt. Dacuk felt uncomfortable around Drees because he believed that she would press sexual harassment charges. (*Id.* ¶ 34.) On October 20, 2004, Cpt. Hanley again visited Drees' precinct and spoke with Sgt. Dacuk. (*Id.* ¶ 35.) The next day, Drees was demoted two grade levels, from dispatcher to 911 operator. (*Id.* ¶ 36.) As Drees had not worked as a 911 operator for many years, she asked to be retrained, but her request was denied. (*Id.*) Drees was told to "do the best

---

[2] Time off accrued from overtime work. (Am. Compl. ¶ 28.)

she could." (*Id.*)

Immediately after learning of the demotion, Drees complained to Lt. O'Callaghan, stating that the demotion was in retaliation for her complaints of sexual harassment and retaliation. (*Id.* ¶ 37.) Drees also told Lt. O'Callaghan about Cpt. Hanley's conversations with Sgt. Dacuk, and stated that she believed Sgt. Dacuk had been informed of her previous complaints of sexual harassment and retaliation. (*Id.* ¶ 37.) According to Drees, Lt. O'Callaghan agreed that the SCPD's actions were in retaliation for Drees' past complaints. (*Id.*) Following her conversation with Lt. O'Callaghan, Sgt. Dacuk and Ms. Hubner allegedly "overscrutinized" Drees and reprimanded her for actions that had not raised a concern prior to her meeting with Lt. O'Callaghan. (*Id.* ¶ 38.) According to Drees, Sgt. Dacuk and Ms. Hubner also reprimanded Drees for actions that they did not criticize when performed by Drees' colleagues who had not made complaints about sexual harassment or retaliation. (*Id.*) Each time that Drees was reprimanded, her requests to be retrained were denied. (*Id.*) According to Drees, her union representative confirmed that the SCPD harassed her "in an effort to cause [Drees] to lose her temper and be insubordinate." (*Id.*)

On December 8, 2004, Drees was demoted three additional grade levels, from 911 operator to switchboard operator. (*Id.* ¶ 39.) The SCPD alleged that Drees was demoted because it received a civilian complaint regarding one of the 911 calls that Drees handled. (*Id.*) Drees contends that the SCPD never received a complaint from the civilian in question. (*Id.*) On December 10, 2004, the SCPD brought disciplinary charges against Drees for actions that she had allegedly engaged in from September 2000 through June 2004. (*Id.* ¶ 40.) According to Drees, such charges were without basis and were brought in a manner contrary to SCPD policies.[3] (*Id.*)

On December 15, 2004, Drees requested a copy of her personnel file. (*Id.* ¶ 41.) On January 15, 2005, when she received a copy of the file, she noticed that many of the documents that had been contained in the file on April 10, 2002 (the first time that she had reviewed the file's contents) were no longer there. (*Id.*) Drees also contends that many of the written reprimands contained in the file did not contain her signature, as required by SCPD policy. (*Id.*) On January 27, 2005, Drees was given a choice between leaving her job or accepting a demotion to Detention Attendant, one month of suspension without pay, and one year of probation. (*Id.* ¶ 42.) Drees accepted the demotion. (*Id.*) According to Drees, her job responsibilities have changed, she earns approximately twenty-thousand dollars less than before, and the attendant position is five grades lower than her dispatcher position – factors which will also affect her pension. (*Id.*) In addition, as a Detention Attendant, Drees does not receive opportunities to perform overtime and to accrue comp time. (*Id.*) During March 2005, Sgt. Dacuk allegedly announced to Drees' coworkers and supervisors that she was "a bad dispatcher" and that she had improperly voided over two thousand calls. (*Id.* ¶ 43.)

---

[3] Drees charges that, for instance, by bringing charges in 2004 relating to incidents that took place in 2000, the SCPD violated its own policy that: "[n]o disciplinary proceeding[s] shall be commenced more than three (3) years after the occurrence of the alleged . . . misconduct." (Am. Compl. ¶ 40.)

## B. Procedural History

On July 7, 2006, plaintiff filed the instant action. In her amended complaint, filed on September 19, 2006, plaintiff asserted causes of action under (1) Title VII of the Civil Rights Act of 1964; (2) the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; and (3) the New York Human Rights Law. Plaintiff seeks compensatory and punitive damages, lost pay, front pay, injunctive relief, attorneys' fees and costs. On December 1, 2006, defendants moved to dismiss as to all claims. Oral argument was held on March 9, 2007.

## II. STANDARD OF REVIEW

Defendants' motions to dismiss for want of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6) are governed by the same standard. *See Coveal v. Consumer Home Mortgage, Inc.*, No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *6 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003)). In reviewing such motions, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 2007 U.S. App. LEXIS 13911, at *36 (2d Cir. Jun. 14, 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (May 21, 2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal*, 2005 U.S. Dist. LEXIS 25346, at *7 (quoting *Magee v. Nassau Cty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## III. DISCUSSION

### A. Rule 12(b)(1) Motion to Dismiss

Defendants argue that this Court lacks subject-matter jurisdiction over plaintiff's Title VII and New York Human Rights Law claims because plaintiff failed to exhaust her administrative remedies. As set forth below, the Court concludes that plaintiff has properly exhausted her administrative remedies.

#### 1. Title VII

In order to bring a Title VII discrimination claim in a federal district court, a plaintiff must first exhaust her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)). "Exhaustion of remedies is a precondition to suit, and a plaintiff typically may raise in a district court complaint only

those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Id.* at 83 (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) and *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)) (additional citation omitted). In this case, the plaintiff filed a complaint with the New York State Division of Human Rights on June 8, 2005. (Defs.' Ex. F; Pl.'s Br., at 4.) The Division of Human Rights forwarded the complaint to the EEOC. Plaintiff received a right-to-sue letter from the EEOC dated April 19, 2006. (Pl.'s Ex. A.)

However, defendants contend that plaintiff has nevertheless failed to avail herself of all of the administrative remedies available to her under the New York Civil Service Law. According to defendants, on three occasions, Drees was disciplined by the SCPD, and in each case, she chose to sign stipulations – admitting to the misconduct on one occasion and not contesting the charges on two other occasions. (Defs.' Br., at 4.) Defendants assert that plaintiff could have challenged the proposed disciplinary actions against her by requesting a hearing; if she were to receive an unfavorable determination from the hearing officer, then she could have appealed such a decision to the Civil Service Commission, and would also be entitled to one further appeal before a New York State court. (Defs.' Br., at 3-4.)

This Court finds that defendants' arguments are unpersuasive. Drees has fully complied with the exhaustion requirements of the statute by filing a complaint with the EEOC and receiving a right-to-sue letter from the agency. As Judge I. Leo Glasser has observed:

In the context of Title VII claims, the Supreme Court has observed in a unanimous opinion that Title VII 'vest[s] federal courts with plenary powers to enforce the statutory requirements; and it specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (emphasis added). Those prerequisites are met when the plaintiff (1) files a timely charge of employment discrimination with the EEOC, and (2) receives and acts upon the statutory right to sue notice from the EEOC. *Id.* (citing 42 U.S.C. §§ 2000e-5(b), (e) and (f)). No further exhaustion of administrative remedies is required by the statute, nor can any such exhaustion requirement be judicially grafted on to the statute.

*Am. Fed. of State, County and Mun. Employees, AFL-CIO (AFSCME) v. County of Nassau*, 609 F. Supp. 695, 702 (E.D.N.Y. 1985); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (holding that, under Title VII, a claimant may bring suit in federal court "only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter") (citations omitted); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 (7th Cir. 1989) ("This is not to say that a state could not impose an exhaustion requirement for claims based entirely on state law but here, of course, the foundation was Title VII and plaintiff complied with her requirement under that statute."), *aff'd*, 494 U.S. 820 (1990); *Henry v. Topeka State Hosp.*, 1991 WL 201190, at *1 (D. Kan. 1991). Therefore, the Court denies defendants' motion to dismiss

plaintiff's Title VII claim for lack of subject-matter jurisdiction.

## 2. State Law Claim

Defendants also contend that plaintiff was required to exhaust her administrative remedies in order to bring state claims against defendants. However, plaintiff's sole state claim arises under the New York Human Rights Law ("NYHRL"), which, unlike Title VII, does not require exhaustion of administrative remedies prior to bringing a civil lawsuit. *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 136 n.13 (E.D.N.Y. 2002) (citing N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages.") and *Crespo v. N.Y. City Transit Auth.*, No. 01-CV-0671 (ILG), 2002 WL 398805, at *10 (E.D.N.Y. Jan. 7, 2002) (collecting cases)). The Court thus denies defendants' motion to dismiss plaintiff's NYHRL claim under Fed. R. Civ. P. 12(b)(1).

## B. Rule 12(b)(6) Motion to Dismiss

Defendants argue that plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) plaintiff's claims are untimely; (2) plaintiff has allegedly waived her claims against defendants by entering into a stipulation with the Suffolk County Police Department; (3) plaintiff has failed to set forth valid hostile work environment and retaliation claims; (4) with regard to plaintiff's state claims, she has failed to file a timely notice of claim; (5) plaintiff has failed to set forth a valid Equal Protection claim; and (6) plaintiff has not properly alleged a *Monell* claim against the County. The Court shall address each of these arguments in turn.

### 1. Timeliness of Claims

#### a. Title VII

Defendants contend that plaintiff's Title VII hostile work environment and retaliation claims are untimely because none of the alleged discriminatory acts took place within three-hundred days of plaintiff filing a complaint with the New York State Division of Human Rights on June 8, 2005. Prior to filing a Title VII claim in federal court, a plaintiff must institute proceedings with a state or local agency within 300 days. 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 108-09 (2002) ("In the contest of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)); *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162 (May 29, 2007). These statutory filing periods are "analogous to [] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). This "statute" of limitations begins to run for each discrete discriminatory or retaliatory act when each act occurs. *See Morgan*, 536 U.S. at 114; *Hill*, 312 F. Supp. 2d at 472. Accordingly, claims for relief

under Title VII that took place 300 days or more prior to June 8, 2005 would generally be time-barred.

Therefore, for purposes of plaintiff's hostile work environment or retaliation claims, any discrete acts of discrimination or retaliation occurring *after* August 12, 2004 are timely. The Court may thus consider: (1) Drees' October 21, 2004 demotion;[4] (2) reprimands by Sgt. Dacuk and Ms. Hubner, (3) Drees' December 8, 2004 demotion; (4) the disciplinary action taken against Drees on December 10, 2004; (5) defendants' requirement that Drees either accept a demotion or be terminated from her job on January 27, 2005; and (6) Sgt. Dacuk's statements criticizing Drees, made in March 2005, to be timely under Title VII.[5]

b. NYHRL and Section 1983.

Section 296 of the NYHRL permits lawsuits to be filed three years from the date of the injury allegedly caused by discrimination. *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). Likewise, with regard to plaintiff's Section 1983 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (Section 1983), *cert. denied*, 538 U.S. 922 (2003). Thus, plaintiff's claims involving any discrete acts of discrimination or retaliation that occurred between July 7, 2003 and July 7, 2006 –

---

[4] In connection with their argument regarding the timeliness of plaintiff's complaint, defendants allege that Drees' October 21, 2004 demotion from dispatcher to 911 operator does not constitute an "adverse employment action" for purposes of Title VII. (Defs.' Br. at 6.) For reasons set forth in section III(B)(3)(b), *infra*, the Court finds that plaintiff has sufficiently pled that the October 21, 2004 demotion is an adverse employment action.

[5] In addition, plaintiff urges that the Court consider the time-barred discrete acts of discrimination and retaliation listed in plaintiff's complaint as "background evidence" in support of her timely claims. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (citing *Morgan*, 536 U.S. at 113, and *Petrosino v. Bell Atl.*, 385 F.3d 210, 220, 226 (2d Cir. 2004)). The Second Circuit has stated that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation [or discrimination] involved, may be considered to assess liability on the timely alleged act." *Id.* (citations omitted) (holding that district court, by failing to consider time-barred

acts of retaliation which, although not actionable, "might nonetheless remain admissible at trial and could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts," had erroneously concluded that plaintiff could not establish a *prima facie* case); *see also Petrosino*, 385 F.2d at 220 ("[E]vidence of earlier promotion denials may constitute relevant 'background evidence in support of a timely claim.'"); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988) (finding that, while a decisionmaker's statements indicating racial bias "standing alone, occurring as they did over five years before the [adverse employment action], could not suffice to uphold a finding [of discrimination], they do add support, in combination with the other evidence, to the ultimate conclusion"), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, codified in 42 U.S.C. § 1981(b), *as recognized in Linsalata v. Tri-State General Ins., Ltd.*, No. 92-0596 (ABB), 1992 U.S. Dist. LEXIS 19665, at *3-*4 (E.D. Pa. Dec. 17, 1992). The Court, however, declines to address this evidentiary issue at this juncture and will defer, until the time of trial, the issue of the admissibility of any time-barred acts as background evidence.

specifically, the six acts listed supra – are timely for purposes of the NYHRL and Section 1983.[6]

b. "Continuing Violation" Doctrine

Plaintiff contends that defendants' acts that took place prior to the statutory time period should also be considered by the Court as part of a "continuing violation" that created a hostile work environment at the SCPD from 1991 through the present. (Pl.'s Br., at 5-6.) As the Supreme Court explained in *National Railroad Passenger Corporation v. Morgan*, "the incidents constituting a hostile work environment are part of one unlawful employment practice," and, therefore, "the employer may be liable for all acts that are part of this single claim." 536 U.S. at 119. Accordingly, in the case of plaintiff's hostile work environment claim, "the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d at 220 (quoting *Morgan*, 536 U.S. at 117).

In the instant case, defendants argue that plaintiff fails to allege an act "contributing to a claimed hostile environment within the 300 day period" preceding her filing of a complaint with the New York Division of Human Rights. (Defs.' Br., at 8.) However, at least six such acts were clearly alleged in the complaint as part of the plaintiff's hostile work environment claim: (1) Drees' October 21, 2004 demotion; (2) reprimands by Sgt. Dacuk and Ms. Hubner, (3) Drees' December 8, 2004 demotion; (4) the disciplinary action taken against Drees on December 10, 2004; (5) defendants' requirement that Drees either accept a demotion or be terminated from her job on January 27, 2005; and (6) Sgt. Dacuk's statements criticizing Drees, made in March 2005. Therefore, plaintiff has clearly alleged acts within the 300-day period that she contends contributed to a hostile work environment and, on that basis alone, that claim is not time-barred.

Moreover, under the continuing violation doctrine, "for the purposes of analyzing [Drees'] hostile environment claim under Title VII, [the Court shall] consider the *entire* time period of her claim," including conduct that occurred before August 4, 2004, at the motion to dismiss stage. *Brightman v. Prison Health Serv., Inc.*, No. 05-CV-3820 (SLT) (VVP), 2007 U.S. Dist. LEXIS 23724, at *12 (E.D.N.Y. Mar. 30, 2007)); *see, e.g., Linder v. City of New York*, 263 F. Supp. 2d 585, 594 (E.D.N.Y. 2003) (denying motion to dismiss hostile work environment claim where plaintiff was sexually assaulted by a co-worker prior to the statutory time period, but was subjected to retaliatory acts and was forced to work in close proximity to her assailant within 300 days of the date on which plaintiff filed her EEOC complaint). Defendants argue that the earlier incidents alleged by plaintiff, which date back to 1991, are not part of a continuing violation in connection with plaintiff's hostile work environment claim because such incidents

---

[6] Plaintiff argues that any state claims accruing after June 8, 2002, three years before plaintiff filed her claim with the New York Division of Human Rights, are timely. However, the statute of limitations is measured from the time of filing the complaint, and "New York law does not permit tolling of the statute of limitations during the pendency of administrative proceedings." *Plumey v. New York*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (citing *Auletta v. Tully*, 576 F. Supp. 191, 195 (N.D.N.Y. 1983)).

involved different alleged harassers, and because there was a significant period of time during which plaintiff does not allege that any acts of harassment took place. However, under the circumstances alleged in this case, the issue of whether sufficient continuity exists for all of the conduct alleged to count as part of a single hostile work environment claim cannot be resolved at the motion to dismiss stage. For example, in *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999), the plaintiff alleged that his employer failed to promote him during a long time period until his retirement. In reversing the district court's dismissal of the claim on statute of limitations grounds, the Second Circuit held:

> [I]n the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time. And consistently with the Amended Complaint it is possible that [plaintiff] could demonstrate some discriminatory act that did occur within the statute of limitations, so that his claim would not be time-barred (s*ee Lightfoot [v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)], stating that "the mere allegation of the existence of such a [continuing] policy would be sufficient to withstand a challenge for failure to state a claim"; *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 755 (2d Cir. 1976) (same)).

*Id.; see also Allen v. Egan*, 303 F. Supp.2d 71, 79 (D. Conn. 2004) ("Determining whether the events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings [on a motion to dismiss as time-

barred]. Defendants may, of course, re-assert this defense in a properly supported motion under Rule 56 of the Federal Rules of Civil Procedure."); *Bloom v. N. Y. City Bd. of Educ.*, 2003 WL 1740528, at *10 (S.D.N.Y. Apr. 2, 2003) (denying motion to dismiss as premature where plaintiff alleged a continuing violation and set forth at least one timely adverse employment action alleged to be discriminatory). Similarly, in the instant case, plaintiff has alleged that there was a continuous hostile work environment from 1991 until 2005. The Court recognizes that the Amended Complaint does not contain alleged acts of harassment during every year in that entire time frame and it may be that, after discovery in the instant case, plaintiff may be unable to prove that the timely incidents of harassment were sufficiently connected to the otherwise time-barred conduct to constitute a continuing violation. Nevertheless, at the motion to dismiss stage, the Court is unable to conclude that it will not be possible for plaintiff to prove such a continuing violation, given the detailed allegations contained in the complaint. Thus, at this juncture, the Court is considering the entire period in analyzing plaintiff's hostile work environment claim in conjunction with defendants' motion to dismiss. In any event, as noted *supra*, the claim is timely even in the absence of the pre-August 2004 conduct, because plaintiff has alleged conduct within the applicable statute of limitations.

In sum, defendants' motion to dismiss plaintiff's hostile environment claim, on the basis that it is untimely, is denied.[7]

---

[7] However, outside the context of the hostile work environment claim pursuant to a continuing violation theory, any pre-August 4, 2004 conduct by defendants that constitute separate, discrete acts of alleged retaliation are time-barred under

## 2. Waiver

Defendants also argue that plaintiff's claims are precluded by a stipulation that Drees signed on January 27, 2005, stating that she "agrees to waive any and all rights she may have pursuant to . . . any other State or Federal statutory or case law concerning the matters of her employment." (Defs.' Ex. C ¶ 4.) "A plaintiff may waive a statutory claim for discrimination as long as it is done knowingly and voluntarily." *Shain v. Ctr. for Jewish History*, No. 04-CV-1762 (NRB), 2006 WL 3549318, at *3 (S.D.N.Y. Dec. 7, 2006) (citing *Bormann v. AT&T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989) (dismissing ADEA claims), *superseded by statute*, Older Workers Benefits Protection Act, 29 U.S.C. § 626(f), *as recognized in Am. Airlines, Inc. v. Cardoza-Rodriguez*, 133 F.3d 111 (1st Cir. 1998); *Branker v. Pfizer, Inc.*, 981 F. Supp. 862 (S.D.N.Y. 1997) (dismissing NYSHRL claims)). In determining whether a waiver was "knowing and voluntary," a totality of the circumstances test is applied. *Id.* (citing *Bormann*, 875 F.2d at 403; *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437-38 (2d Cir. 1998)). "Factors to be considered include: (1) plaintiff's education and business experience; (2) the amount of time plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether plaintiff was represented by or consulted with an attorney"; and (6) "whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled to under contract." *Id.* (citing *Livingston*, 141 F.3d at 438). Moreover, under New York law, which applies a lesser

standard, "a release need only be clear, unambiguous, and knowingly and voluntarily entered into." *Id.* (citing *Nicholas v. NYNEX, Inc.*, 929 F. Supp. 727, 732 (S.D.N.Y. 1996)); *but see Goode v. Drew Bldg. Supply, Inc.*, 697 N.Y.S.2d 417, 417-18 (N.Y. App. Div. 1999) ("We reject the contention that the validity of that release is to be determined in accordance with . . . the totality of the circumstances standard applicable to Federal discrimination claims.") (citations omitted). Although it may well be that plaintiff signed a valid release that precludes her from now asserting federal and state employment discrimination claims, at the motion to dismiss stage in the proceeding, the Court has almost no information upon which to analyze the above-listed factors. Therefore, the Court declines to dismiss plaintiff's claims pursuant to Rule 12(b)(6) on this basis.

Moreover, even where these factors are met, a plaintiff may assert a defense of duress to void the effects of a valid release, and the plaintiff, in this instance, has done so. In this case, Drees was subject to disciplinary sanction by the SCPD based upon acts that she had allegedly committed in July 2003 and June 2004. (Defs.' Ex. C ¶ 1.) On December 10, 2004, Drees was allegedly notified of the disciplinary charges against her, which she claims were "without basis" and levied against her "in a manner that was contrary to the SCPD's policies." (Am. Compl. ¶ 40.) On January 27, 2005, Drees entered into a stipulation with the SCPD and the County of Suffolk "in lieu of the continued disciplinary proceedings against the employee pursuant to New York State Civil Service Law § 75." (Defs.' Ex. C.) Specifically, the agreement was to replace a "hearing pursuant to Civil Service Law § 75 . . . and to impose an appropriate sanction for acts committed by" Drees. (*Id.* ¶ 1.) Drees signed the stipulation,

---

*Morgan.*

which required her to accept suspension without pay for one month, one year of probation, and a demotion to the position of "Detention Attendant, or some similar position." (*Id.* ¶¶ 6, 8.) Drees was also required to accept that "she will not be entitled to a position as a Public Safety Dispatcher or Emergency Complaint Operator in the future." (*Id.* ¶ 6.) According to Drees, she was told that she could either "lose her job" or sign the stipulation, which she contends amounted to economic duress. (Am. Compl. ¶ 42.) "In order to establish that the release is voidable on the ground of economic duress, plaintiff must show that the agreement was obtained (1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." *Reid v. IBM Corp.*, No. 95-CV-1755 (MBM), 1997 WL 357969, at *7 (S.D.N.Y. Jun. 26, 1997) (quoting *Nicholas*, 929 F. Supp. at 732) (additional citations omitted). At this stage in the lawsuit, the Court finds that plaintiff has set forth sufficient facts for her claim that she signed the stipulation under duress to be "plausible on its face." *Bell Atl. Corp.*, 127 S. Ct. at 1974. Therefore, defendants' motion to dismiss on grounds of waiver is denied.

### 3. Title VII and NYHRL Claims

The substance of Drees' Title VII claims are that she was (1) subjected to a hostile work environment, including sexual harassment, reprimands and demotions because of her gender; and (2) retaliated against for challenging what she believed to be discriminatory treatment.[8]  *See, e.g.,*

*Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (summarizing plaintiff's claims).

### a. Hostile Work Environment Claim

Under Title VII, it is unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. "The phrase 'terms, conditions, or privileges of employment' is broad enough to encompass, and render actionable, an employer's requirement that an employee 'work in a discriminatorily hostile or abusive environment,' so long as the discriminatory conduct at issue is 'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Gregory*, 243 F.3d at 691 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). This is the case even where an employer does not engage in "'tangible employment action[s]'" constituting "'a change in the terms and conditions of employment' by formally altering a worker's employment status." *Id.* (quoting *Burlington Indus., Inc.*, 524 U.S. at 753-54). Thus, an employer may be liable for creating a hostile work environment, even in the absence of "tangible employment actions," if a plaintiff suffers harms as a result of conduct that is (1) "'objectively' severe or pervasive – that is, if it creates 'an environment that a reasonable person would find hostile or abusive,'" (2) if it creates an

---

[8] The Court shall consider plaintiff's state law claim under the New York Human Rights Law in tandem with her Title VII claims, because the same standard is applicable to both statutes. *Reed*

*v. A.W. Lawrence & Co., Inc.*, 95 f.3d 1170, 1177 (2d Cir. 1996); *Borski v. Staten Island Rapid Transit*, No. 04-CV-3614 (SLT) (CLP), 2006 U.S. Dist. LEXIS 89242, at *6 n.3 (E.D.N.Y. Dec. 11, 2006).

environment "that the plaintiff 'subjectively perceives' as hostile or abusive" and (3) "that creates such an environment because of plaintiff's sex.'" *Id.* at 691-92 (citations omitted). Under *Harris*, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Moreover, "the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer," for example, by showing that the harassing conduct was by supervisory co-workers or, in the case of non-supervisory co-workers, by "showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005), *abrogated on other grounds by White*, 126 S. Ct. at 2405.

In this case, defendants contend that plaintiff's hostile work environment claim must fail because her allegations do not indicate conduct "ris[ing] to the level of actionable harassment or hostile work environment." (Defs.' Br., at 8.) However, in order to withstand a motion to dismiss, plaintiff need not plead a *prima facie* case of discrimination. *Liebowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 508, 510 (2002)). Under the standard set forth by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. at 513, a plaintiff alleging employment discrimination need only satisfy Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 510 (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint alleging employment

discrimination is sufficient to withstand a motion to dismiss if it gives 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Wilson v. Family Dollar Stores*, No. 06-CV-0639 (DGT), 2007 U.S. Dist. LEXIS 23083, at *26-*27 (E.D.N.Y. Mar. 29, 2007) (quoting *Swierkiewicz*, 534 U.S. at 512) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atl. Corp.*, 127 S. Ct. at 1955)); *see also Malone*, 2006 U.S. Dist. LEXIS at *12 (same) (citing *Bonano v. Southside United Hous. Dev. Corp.*, 363 F. Supp. 2d 559, 563-64 (E.D.N.Y. 2005)). Thus, "at this stage, the proper inquiry is not whether the plaintiff has adduced sufficient evidence to prevail ultimately at trial, but rather whether she is entitled to offer evidence to support her claims." *Wilson*, 2007 U.S. Dist. LEXIS 23083, at *27 (citing *Swierkiewicz*, 534 U.S. at 515 ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.")).

The Court finds that Drees' amended complaint satisfies the requirements of *Swierkiewicz*. Drees alleges that, over a fourteen-year period from 1991 through March 2005, she was subjected to (1) countless physical advances during the period from 1991 and 1996, including having her shoulders rubbed daily while sergeants looked down her blouse (Am. Compl. ¶ 15) and having her thighs touched by SCPD sergeants and officers twice monthly (*Id.*); (2) repeatedly being followed out to her car and asked by SCPD police officers and sergeants to engage in sexual relations, during a period between 1991 and 1996 (*Id.* ¶ 16); (3) repeated sexual comments between 1991 and 1996 (*Id.* ¶ 14a-k; *see supra*, footnote 2); (4) being subjected to Sgt. Sheridan's attempt to pull her into a room and kiss her (*Id.* ¶ 15); (5)

learning that officers had allegedly placed bets regarding who would have intercourse with Drees first (*Id.* ¶ 17); (6) having sexual comments made to her by an officer and broadcast over the dispatch system (*Id.* ¶ 18); (7) being reassigned or demoted on four occasions – in March 1996, and on October 20, 2004, December 8, 2004, and January 27, 2005 (*Id.* ¶¶ 20, 36, 39, 42); (8) having her work assignments changed repeatedly from March 1996 through 1997 (*Id.* ¶ 22); (9) being reprimanded or disciplined, allegedly without cause, on at least five occasions – repeatedly from March 1996 through 1997, in December 1997, on May 14, 2002, on July 19, 2004, repeatedly between October 20, 2004 and December 8, 2004, on December 10, 2004, and in March 2005 (*Id.* ¶¶ 22, 25-26, 28, 32, 38, 40, 43); (10) being asked to use unfamiliar equipment and being denied training repeatedly from March 1996 through 1997, on October 20, 2004, and from October 2004 through December 8, 2004 (*Id.* ¶¶ 22d, 36, 38); and (11) being told that such actions were in response to Drees' complaints of harassment, discrimination and/or retaliation several times during March 1996, again in 1997, on August 12, 2004, and twice between October 20, 2004 and December 8, 2004 (*Id.* ¶¶ 20, 21, 23, 24, 33-34, 37, 38).[9] The Court finds that the complaint provides fair notice to defendants as to plaintiff's claims and the grounds for plaintiff's claims. Accordingly, the hostile work environment claim is sufficiently pled, under *Swierkiewicz*, to survive a motion to dismiss.

---

[9] In addition, plaintiff's allegations indicate that her supervisors were among the perpetrators of the sexually harassing and discriminatory conduct, and that she complained on a number of occasions to those supervisors, as well as to others.

b. Retaliation Claim

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory*, 243 F.3d at 700 (quoting *Reed*, 95 F.3d at 1178). For purposes of surviving the instant motion to dismiss, a plaintiff need only provide defendants with fair notice of her retaliation claims and the grounds upon which such claims rest. *Swierkiewicz*, 534 U.S. at 512. As set forth below, the Court finds that plaintiff has met this standard and, thus, has sufficiently pled a retaliation claim.

Plaintiff has alleged that she repeatedly complained to her supervisors and to her union representative that she was being subjected to discriminatory and harassing treatment on the basis of her sex. *See, e.g., Borski*, 2006 U.S. Dist. LEXIS 89242, at *15-*16 ("For Plaintiff's conduct to constitute participation in a protected activity, it is enough that he has made 'informal protests of discrimination, including making complaints to management.'") (quoting *Gregory*, 243 F.3d at 700-01). "An employee 'need not establish that the conduct she opposed was in fact a violation of Title VII,' but rather, only that she had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quoting

*Manohoran v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that to prove that she was engaged in "protected activity," an employee need only have a "good faith reasonable belief that the underlying challenged actions of the employer violated the law") and citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). Thus, plaintiff has sufficiently pled the first two elements of a retaliation claim, by alleging facts indicating that she engaged in protected activity and that the SCPD – including Capt. Hanley, Sgt. Dacuk, Lt. O'Callaghan and Ms. Huber (Am. Compl. ¶¶ 34-38) – was aware of Drees' activity.

Drees has also properly pled the third element of a retaliation claim, which requires a "materially adverse" employment action. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (June 22, 2006). Drees alleges she was demoted on three occasions within the 300 day statute of limitations for her retaliation claim – on October 21, 2004, December 8, 2004 and January 27, 2005. Title VII requires a plaintiff to show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 126 S. Ct. at 2415. Based upon the Supreme Court's holding in *White*, as well as previous Second Circuit precedent, examples of adverse employment actions may include, but are not limited to "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Fairbrother*, 412 F.3d at 56). Drees further

alleges a tangible impact from the demotions – taking on a title and job position several levels down from her previous ones, being required to assume different responsibilities, for which she needed training, and receiving a diminished salary, lower pension benefits, and fewer overtime opportunities. In short, plaintiff has sufficiently pled an adverse employment action. *Id.*

Finally, with regard to the fourth element of a retaliation claim, a causal connection between the plaintiff's protected activity and the adverse employment actions, Drees has alleged facts indicating that her demotion on October 21, 2004 was in response to her previous complaints of sexual harassment and retaliation. Specifically, the amended complaint states that, when Drees complained to Lt. O'Callaghan about the demotion, Lt. O'Callaghan "agreed" with Drees that "the SCPD's actions were in retaliation for Genevieve's past complaints." (Am. Compl. ¶ 37.) Thus, Drees has set forth facts which satisfy the pleading requirements under Rule 8. The Court, therefore, denies defendants' motion to dismiss plaintiff's retaliation claim.

c. Individual and Employer Liability

It is well-established that Title VII does not provide for individual liability.[10] *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), *superseded on other*

_____

[10] Furthermore, in the case of discrimination claims, "[o]nly the employer may be held liable, and is in fact held vicariously liable for a hostile work environment created by a supervisor with immediate or successively higher authority over the victimized employee." *Linder*, 263 F. Supp. 2d at 594-95 (citing *Burlington Indus., Inc.*, 524 U.S. at 765, and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

*grounds by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, codified in 42 U.S.C. § 1981(b), *as recognized in Fernandez v. M& L Milevoi Mgt., Inc.*, 357 F. Supp. 2d 644 (E.D.N.Y. 2005); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII."); *see also Malone v. City of New York*, No. 05-CV-2882 (DGT), 2006 U.S. Dist. LEXIS 61866, at *6-*7 (E.D.N.Y. Aug. 30, 2006). Accordingly, the Title VII claims against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro are dismissed.

### d. Failure to File a Notice of Claim

Defendants argue that plaintiff's state claims under the NYHRL are precluded by her failure to file a timely notice of claim. Under New York General Municipal Law § 50(e)(1)(a) and New York County Law § 52[1], a plaintiff must file a notice of claim against a county or its employees within ninety days after such claim arises. N.Y. Cty. Law § 52 (citing N.Y. Gen. Mun. Law § 50(e)). Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant has neglected to or refused to adjust or to satisfy the claim. *See Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006) (citing *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)). The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement. *Id.* (citing *Horvath*, 423 F. Supp. 2d at 423, and *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943 (N.Y. App. Div. 1989)). In this case, it is undisputed that plaintiff (1) has failed to comply with any of these requirements and (2) has yet to file a notice of claim upon defendants.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills v. Monroe County*, 59 N.Y.2d 307, 308 (N.Y. 1983), *overruled on other grounds by Felder v. Casey*, 487 U.S. 131 (1988) (holding that a state notice of claim provision may not be applied to bar a *federal* civil rights claim).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding employment discrimination claim that "seeks enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *id.* (finding that, while plaintiffs' recovery might

have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"); *Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (E.D.N.Y. 1997). Moreover, as discussed below, this Court cannot grant plaintiff's leave to serve late notice.

As such, plaintiff's failure to file a notice of claim requires dismissal of the state law claims against the County. By its plain language, Section 52 applies to any action brought against the County. However, with regard to plaintiff's state claims against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro in their individual capacities, the failure to file a timely notice of claim is not a bar to such actions. *See, e.g., Walker v. City of New York*, No. 98-CV-2695 (SJ), 2002 U.S. Dist. LEXIS 18327, at *27 (E.D.N.Y. Jul. 26, 2002) (denying summary judgment for failure to file a notice of claim to the extent that defendant was being sued in his individual capacity); *cf. Kalpin v. Cunningham*, 401 N.Y.S.2d 659 (N.Y. App. Div. 1978) (dismissing for failure to file a notice of claim where "there is nothing in the . . . complaint that could be construed as an allegation against defendant[s] in [their] individual capacit[ies]").

Accordingly, because plaintiff failed to serve a timely notice of claim on the County, all of her state law claims against the County are dismissed without prejudice. *See Gaffney*, 182 F. Supp. 2d 278 (dismissing NYHRL claims for failure to serve timely notice of claim). Plaintiff may return to federal court with her pendent state law claims only after she has satisfied the condition precedent required by Sections 52 and 50-e – that is, after she has filed an application to the appropriate state court for leave to file a late

notice of claim, that request has been granted, and such a notice has been filed. *See Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 261 (S.D.N.Y. 1989); *Horvath*, 423 F. Supp. 2d at 425.

Plaintiff attempts to rescue her state law claims by arguing that the filing of a notice of claim was unnecessary because "Defendants had knowledge of Plaintiff's claims." (Defs.' Br., at 15.) Plaintiff relies upon several cases in support of this proposition, including *Tatum v. City of New York*, 555 N.Y.S.2d 158, 159 (N.Y. App. Div. 1990), *Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 36 (E.D.N.Y. 2005), *Schnieder v. Vill. of Great Neck Estates*, 799 N.Y.S.2d 164 (N.Y. Dist. Ct. 2004) (table case). However, these cases are entirely inapposite, and do not indicate that the notice of claim requirement may be waived where a defendant has otherwise received notice of plaintiff's intended claims. Rather, these cases discuss defendant's knowledge of the facts relating to a plaintiff's claims in the context of the factors to be considered by a court in granting leave to serve a late notice of claim. For reasons that are discussed below, this Court declines to grant plaintiff's request that she be granted leave to serve a late notice of claim if the Court finds that the notice of claim requirement should not be waived.

Section 50-e(5) provides that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. However, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application. In *Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999), the court noted that the "appropriate state court may extend the time

to file a notice of claim" under Section 50-e, but declined to decide "whether the federal court [had] such jurisdiction." This Court agrees with the overwhelming weight of authority among district courts in the Second Circuit and finds that Section 50-e(7) permits only certain *state* courts – "the supreme court or . . . the county court" in certain counties – to consider and to grant an application for an extension of time. *Henneberger*, 465 F. Supp. 2d at 200 (quoting N.Y. Gen. Mun. Law § 50-e(7), and collecting cases); *Brown*, 717 F. Supp. at 258-61 ("[U]ntil the state legislature amends [Section 50-e(7)] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.") (collecting cases). Therefore, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiff's state law claims timely filed.

Even if this Court had jurisdiction to grant plaintiff leave to file a late notice of claim, the Court would decline to do so on the merits. Plaintiff argues that, through plaintiff's "October 2004 complaint [to Lt. O'Callaghan], Defendants acquired actual knowledge of the essential facts of Plaintiff's claims within days of their accrual." (Pl.'s Br., at 17). Therefore, according to plaintiff, defendants would have not been prejudiced by her failure to file a notice of claim. (*Id.* at 18.) Plaintiff compares the instant case to *Bucalo*, 351 F. Supp. 2d at 36, in which the court granted the plaintiff leave to file a late notice of claim. In *Bucalo*, the plaintiff was terminated at the end of the 2003 school year, and her attorney sent a letter to the District Superintendent concerning her allegations, to which counsel for the District responded. *Bucalo*, 351 F. Supp. 2d at 36. In September 2003, plaintiff filed an EEOC

claim of retaliation, to which defendant responded with "detailed information about her allegations in an effort to resolve the claim." *Id.* at 37. By contrast, plaintiff's oral statements to Lt. O'Callaghan, during which she complained specifically about her October 21, 2004 demotion, were far more limited in scope than the instant complaint, and there is no indication that defendants were aware of her allegations of a hostile work environment and retaliation with any particular detail. Even if this Court were to take into account plaintiff's subsequent filing of a complaint with the Division of Human Rights and the EEOC, it is apparent that "where a plaintiff relies upon an EEOC Charge to provide notice of her claim, she does so at her own risk." *Ximines v. George Wingate High Sch.*, No. 05-CV-1214 (ILG), 2006 WL 2086483, at *11 (E.D.N.Y. July 25, 2006) (citing *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 456 (S.D.N.Y. 2001) (holding that an EEOC complaint filed after the three-month statutory period for filing a notice of claim is invalid for such purpose). Moreover, plaintiff also fails to provide any explanation for her failure to file a timely notice of claim. Accordingly, the Court would decline to grant plaintiff leave to file a late notice of claim.

### 4. Section 1983 Claim

Plaintiff alleges, pursuant to Section 1983, that her constitutional rights under the Equal Protection Clause were violated by the SCPD and its employees. In order to state a claim for relief under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method

for vindicating federal rights elsewhere conferred." *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "'A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'" *Patterson*, 375 F.3d at 225 (quoting *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994) and citing *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)).

### a. Equal Protection Claim

Plaintiff asserts violations of her rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Constit. amend. XIV, § 1. To state a claim of gender discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against her on the basis of sex. *Linder*, 263 F. Supp. 2d at 592 (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Plaintiff alleges that she and "her female coworkers" were subjected to "a hostile work environment based on their gender." (Am. Compl. ¶ 14.) "A claim of gender-based discrimination may . . . be premised upon the existence of a 'hostile work environment.'" *Linder*, 263 F. Supp. 2d at 592 (citing *Saulpaugh*, 4 F.3d at 143-44). To establish a hostile-work environment claim under Section 1983, a plaintiff must demonstrate that (1) "she was intentionally harassed"; (2) "the harassment was based on her sex"; (3) "such actions were taken under color of state law"; and (4) "the harassment was so severe as to render the work environment hostile to her." *Id.* (citing *Cohen v. Litt*, 906 F. Supp. 957, 964 (S.D.N.Y. 1995)). For the reasons set forth at length *supra*, at Section III(B)(2), with relation to plaintiff's Title VII claims, the Court also finds that plaintiff has sufficiently pled a hostile work environment claim under Section 1983; the Court also finds that, as required by Section 1983, plaintiff has sufficiently pled that such acts were intentional. *See, e.g., Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) ("Section 1983 sexual harassment claims that are based on a 'hostile environment' theory, . . . are governed by traditional Title VII 'hostile environment' jurisprudence.") (citations omitted); *Patterson*, 375 F.3d at 226 (regarding additional "intentionality" requirement of Section 1983).

While "Title VII claims are not cognizable against individuals, individuals may be held liable under . . . [§] 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment." *Patterson*, 375 F.3d a t 226 (citing *Hayut*, 352 F.3d at 753-54) (additional citation omitted). Furthermore, a plaintiff must demonstrate a defendant's personal involvement in the alleged discrimination in order to establish a claim against such defendant in his individual capacity. *Id.* at 229. Here, defendants contend that the complaint fails to provide due notice "of specific claims as to each named defendant . . . [and] fails to enunciate any specific wrongdoing on the part of any named individual." (Defs.' Br., at 11.) However, the amended complaint clearly sets forth the alleged involvement of each of the named

individual defendants. Plaintiff asserts that Sgt. Carparelli repeatedly made offensive sexual comments (Am. Compl. ¶ 15), rubbed Genevieve's shoulders while looking down her blouse on a daily basis (*Id.* ¶ 16), and told Drees that he was "unhappy with the fact that she was thinking about filing a written sexual harassment complaint, and that she would regret doing so" (*Id.* ¶ 21); plaintiff also suggests that Sgt. Carparelli may have been involved in Drees' reassignment from primary radio to data radio, which took place the day after she asked him to cease harassing her (*Id.* ¶ 20). Plaintiff alleges that Sgt. Dacuk refused to speak to her (*Id.* ¶ 31), verbally reprimanded her without cause (*Id.* ¶ 32), "overscrutinized" and unfairly reprimanded her regularly (*Id.* ¶ 38), requested the presence of a union representative during a routine meeting because he felt "uncomfortable" around Drees and "believed that she would press sexual harassment charges" (Id. ¶¶ 33-34), and "announced to Genevieve's coworkers and supervisors that she was a bad dispatcher and that she improperly voided over 2,000 calls" (*Id.* ¶ 43). Plaintiff also suggests that Sgt. Dacuk may have been involved in the disciplinary actions taken against Drees in December 2004 and Drees' demotions in October 2004, December 2004, and January 2005 (*Id.* ¶¶ 35, 39, 40, 42). Plaintiff alleges that Sgt. Eble, in addition to Sgt. Carparelli, told her that he was "unhappy with the fact that she was thinking about filing a written sexual harassment complaint, and that she would regret doing so" (*Id.* ¶ 21.), and issued a written reprimand to Drees without cause (*Id.* ¶ 26). Plaintiff alleges that Cpt. Hanley made sexual comments to her (*Id.* ¶ 14), improperly berated Drees in the presence of several supervisors and stated "[w]hen I am through with you, you will not get a job at McDonalds" (*Id.* ¶ 28), and spoke with Sgt. Dacuk about Drees' past complaints

of sexual harassment (*Id.* ¶¶ 30, 31, 32, 35). Plaintiff alleges that Sgt. Todoro made sexual comments to her (*Id.* ¶ 14), rubbed Drees' shoulders while attempting to look down her blouse on a daily basis (*Id.* ¶ 15), broadcast offensive comments directed at Drees over the dispatch system, including "[d]o you taste as good as you look tonight?" and "[y]ou are looking really good tonight" (*Id.* ¶ 18), and asked Drees whether she planned to file a written discrimination complaint (*Id.* ¶ 24); in addition, plaintiff also suggests that Sgt. Todoro may have been involved in her reassignment from primary radio to data radio, which took place the day after she asked him to cease harassing her (*Id.* ¶ 20). The Court finds that these statements plainly allege incidents indicating the personal involvement of each named defendant in contributing to a hostile work environment, *see, e.g, Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); moreover, her allegations provide clear notice of her claims against each individual, as well as of the grounds upon which such claims rest, pursuant to Rule 8.

b. Statute of Limitations

The statute of limitations applicable to claims brought under Section 1983 in New York is three years. *See, e.g., Patterson*, 375 F.3d at 225; *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004). Thus, Defendants argue that "no occurrence prior to 3 years before the commencement of this action may serve as the basis for a claim under Sec. 1983," and that plaintiff "fails to attribute specific acts to identified wrongdoers *within the statutory three year period* prior to the commencement of this action." (Defs.' Br., at 11.) However, acts that pre-date the Section 1983 statute of limitations in this case may be considered for purposes of plaintiff's Section 1983 hostile work environment claim under a

continuing violation theory. "The Second Circuit has applied the continuing violations doctrine to claims under § 1983, and 'the law relating to continuing violations under Title VII has traditionally been held to apply by analogy to § 1983 claims.'" *Richards v. City of New York*, 05-CV-1163 (SLT) (MDG), 2007 U.S. Dist. LEXIS 23726, at *31 (E.D.N.Y. Mar. 30, 2007) (quoting *Bland v. New York*, 263 F. Supp. 2d 526, 550 (E.D.N.Y. 2003) (considering acts outside of the limitations period for purposes of plaintiff's hostile work environment claim) and citing *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994) (analyzing statute of limitations defense under 42 U.S.C. § 1983 in same manner as Title VII claim)). For the reasons set forth *supra*, at Section III(A)(1), with regard to plaintiff's Title VII claims, pursuant to the Supreme Court's decision in *Morgan*, the Court finds that acts contributing to plaintiff's Section 1983 hostile work environment claim are not time-barred. *See, e.g., Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003) ("The Supreme Court's ruling in [*Morgan*], although discussing the continuing violation doctrine in the Title VII context, applies equally to § 1983 cases.") (citing *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir.) (explaining the lack of a "principled basis upon which to restrict *Morgan* to Title VII claims" and thus applying it to § 1983 claims), *cert. denied*, 540 U.S. 876 (2003); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058-61 (9th Cir. 2002) (applying *Morgan* to § 1983 claims)).

Therefore, to the extent that plaintiff's claims against the individual defendants relate to her hostile work environment claim, they may be considered; however, the Court shall not consider any Section 1983 claims relating to discrete actions occurring prior to July 7,

2003. *See Morgan*, 536 U.S. at 112-15, 122.

### c. *Monell* Liability

First, defendants contend that plaintiff "has not alleged the existence of a municipal policy or custom in order to impose municipal liability under § 1983" against Suffolk County. (Defs.' Br., at 10.) Under *Monell*, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to support liability under *Monell*, a plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989), and *Monell*, 436 U.S. at 692-94). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). The parties do not dispute that Suffolk County is considered a municipal entity for purposes of the instant lawsuit.

Plaintiff's complaint alleges (1) "a custom or practice of discriminating and/or retaliating against Plaintiff based upon her sex/gender and/or her opposition to discriminatory practices" and that "[t]he discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers";

21

(2) that "[s]upervisors failed to properly investigate and address allegations of retaliation and/or discrimination; (3) "[i]nadequate training/supervision was so likely to result in the retaliation and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision"; and (4) that "[p]olicymakers engaged in and/or tacitly condoned the retaliation and/or discrimination." (Am. Compl. ¶¶ 46a-d.) Based upon plaintiff's accompanying allegations of widespread sexual harassment and retaliatory actions by a number of different members of the SCPD, and of the SCPD's failure to remedy such conditions or to provide training to prevent such actions, despite repeated complaints, the Court finds that such allegations are sufficient to plead a *Monell* claim. At this early stage in the litigation, plaintiff need not prove that she would succeed on her claim of *Monell* liability, but must merely show that she has a plausible claim that would entitle her to relief.

With regard to the individual defendants, to the extent that they are being sued in their official capacities, the claims against them are duplicative of the *Monell* claim against the County. *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Monell*, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Therefore, these claims against the individual defendants in their official capacities are dismissed. However, the Court denies the motion to dismiss with regard to the Section 1983 claims against the individual defendants in their individual capacities.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED.

Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED with regard to plaintiff's Title VII claims against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro in both their official and individual capacities. Defendants' Rule 12(b)(6) motion is GRANTED with regard to plaintiff's Section 1983 claims against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro in their official capacities. Defendant's Rule 12(b)(6) motion to dismiss is GRANTED with regard to plaintiff's NYHRL claims against the County and against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro in their official capacities.

Defendants' Rule 12(b)(6) motion is DENIED with regard to plaintiff's Title VII and Section 1983 claims against the County. Defendants' Rule 12(b)(6) motion to dismiss is DENIED with regard to plaintiff's NYHRL claims against Sgt. Carparelli, Sgt. Dacuk, Sgt. Eble, Cpt. Hanley and Sgt. Todoro in their individual capacities.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 27, 2007
Central Islip, New York

* * *

The attorneys for the plaintiff are Becky Tung, Esq., WDF, Inc., 30 North Macquesten Parkway, Mount Vernon, NY 10550, and Rick Ostrove, Esq., Leeds Morelli & Brown, One Old Country Road, Suite 347, Carle Place, NY 11514. The attorneys for the defendants are Thomas J. Spota, Suffolk County District Attorney, by Jennifer K. Siegel, Esq. and Leonard G. Kapsalis, Esq., Suffolk County Attorney's Office, H. Lee Dennison Building, 5th Floor, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788-4311.