UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 06-CV-3298 (JFB) (ETB)
_____

GENEVIEVE DREES,

Plaintiff,

VERSUS

THE COUNTY OF SUFFOLK, SERGEANT CARPARELLI, SERGEANT DACUK, SERGEANT EBLE, CAPTAIN JOHN HANLEY AND SERGEANT WILLIAM TODORO, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 30, 2009
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Genevieve Drees ("Drees") brings this employment discrimination action alleging a hostile work environment and retaliation on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*, New York State Executive Law §§ 290 *et seq.* ("NYHRL") and the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 against defendants the County of Suffolk, Sergeant Carparelli, Sergeant Dacuk, Sergeant Eble, Captain John Hanley and Sergeant William Todoro (collectively, "defendants").

On June 27, 2007, the Court denied defendant's motion to dismiss with regard to plaintiff's Title VII and Section 1983 claims against the County, and with regard to plaintiff's NYHRL claims against Sergeant Carparelli, Sergeant Dacuk, Sergeant Eble, Captain Hanley and Sergeant Todoro in their individual capacities. The Court granted the motion as to the other federal and state claims.

Following the completion of discovery, defendants now move for summary judgment on all remaining claims. For the reasons set forth herein, defendants' motion is granted in part and denied in part. Specifically, defendants' motion is (1) granted as to the NYHRL claims as time-barred; (2) granted as to plaintiff's gender-based hostile work environment claim under Title VII and Section 1983 to the extent that it is based upon alleged conduct from 1991-1997; (3) denied

as to plaintiff's retaliation claim under Title VII and Section 1983, including a retaliatory hostile work environment claim, based upon her alleged demotion in 2005 and other alleged adverse actions taken by defendants in 2004 and 2005.

I. PROCEDURAL HISTORY

On July 7, 2006, plaintiff filed the instant action. On September 19, 2006, plaintiff filed an amended complaint. On June 27, 2007, the defendants' motion to dismiss was denied in part and granted in part.

On May 9, 2008, defendants filed this motion for summary judgment. On July 11, 2008, plaintiff filed her opposition to defendants' motion. On August 1, 2008, defendants filed their reply. Oral argument was held on September 3, 2008, at which time the parties were given an opportunity to submit supplemental briefing on the issue of plaintiff's waiver. Defendants submitted that briefing on September 29, 2008, and plaintiff submitted additional briefing on October 24, 2008. The Court has considered all of the parties' submissions.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion

2

without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. DISCUSSION[1]

A. The Releases

Defendants argue that summary judgment should be granted in their favor because "the Plaintiff is barred from any legal claim because she signed releases [in 1997, 1998 and 2005] barring future legal action against the Defendant." (Defendants' Letter Brief, dated September 26, 2008, at 1.) "New York law provides that this Court must enforce contract provisions clearly expressing the intent of the parties." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2d Cir. 2006) (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) ("[A] written agreement

---

[1] A summary of the allegations and facts relevant to each claim are set forth in detail in the Court's prior decision on defendants' motion to dismiss. *See Drees v. County of Suffolk, et al.*, No. 06-CV-3298 (JFB) (ETB), 2007 WL 1875623 (E.D.N.Y. June 27, 2007). Familiarity with that decision is presumed, and the claims and allegations will not be repeated here. Instead, in this Memorandum and Order, the Court will discuss the relevant allegations and evidence regarding each claim in the section on that claim. In connection with the summary judgment motion, the Court has taken the facts described below from the plaintiff's complaint, the parties' depositions, affidavits, and exhibits, defendants' Local Rule 56.1 statement of facts ("Defs.' 56.1") and plaintiff's Local Rule 56.1 statement of facts ("Pl.'s 56.1"). In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001). Where only defendants' 56.1 statement is cited, the facts are taken from defendants' 56.1 statement, and plaintiff does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

3

that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.")). With respect to the 2005 release, it states that the employee "agrees to waive any and all rights she may have . . . concerning the matters of her employment as well as any rights she may have pursuant to the Collective Bargaining Agreement between the County of Suffolk and the Association of Municipal Employees, Inc., only reserving the right to proceed against the County with respect to a breach of this stipulation in an arbitration proceeding." (Defendants' Memorandum of Law, Ex. H.)

Plaintiff, however, argues that those releases are not valid because they are not clear and unambiguous on their face and because plaintiff did not enter into them knowingly and voluntarily, as required. (Plaintiff's Letter Brief, dated October 24, 2008.) As set forth below, the Court concludes that there are disputed issues of material fact that preclude summary judgment on the waiver issue.

The parties agree on the applicable legal standard. "A plaintiff may waive a statutory claim for discrimination as long as it is done knowingly and voluntarily." *Shain v. Ctr. for Jewish History*, No. 04-CV-1762 (NRB), 2006 WL 3549318, at *3 (S.D.N.Y. Dec. 7, 2006) (citing *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989) (dismissing ADEA claims), *superseded by statute*, Older Workers Benefits Protection Act, 29 U.S.C. § 626(f), *as recognized in Am. Airlines, Inc. v. Cardoza-Rodriguez*, 133 F.3d 111 (1st Cir. 1998)); *Branker v. Pfizer, Inc.*, 981 F. Supp. 862 (S.D.N.Y. 1997) (dismissing NYHRL claims). In determining whether a waiver was "knowing and voluntary," a totality of the circumstances test is applied. *Branker*, 981 F. Supp. at 865 (citing *Bormann*, 875 F.2d at 403; *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437-38 (2d Cir. 1998)). Factors to be considered include: "(1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law." *Bormann*, 875 F.2d at 403 (quotations and citation omitted); *accord Livingston*, 141 F.3d at 438. The *Bormann* factors are not exhaustive and not every factor must be in defendants' favor for the release to be found knowing and voluntary; rather all of the factors must be examined under the totality of the circumstances. *See Bormann*, 875 F.2d at 403; *accord Nicholas v. NYNEX, Inc.,* 929 F. Supp. 727, 732 (S.D.N.Y. 1996). Moreover, under New York law, which applies a lesser standard, "a release need only be clear, unambiguous, and knowingly and voluntarily entered into." *Shain*, 2006 WL 3549318, at *8 (citing *Nicholas*, 929 F. Supp. at 732); *but see Goode v. Drew Bldg. Supply, Inc.*, 697 N.Y.S.2d 417, 417-18 (N.Y. App. Div. 1999) ("We reject the contention that the validity of that release is to be determined in accordance with . . . the totality of the circumstances standard applicable to Federal discrimination claims.") (citations omitted).

1. Plaintiff's Education and Business Experience

Plaintiff has a high school equivalency diploma and has taken 12 credits of college

4

level courses. (Drees Dep., at 12-13.) Plaintiff has worked for the Suffolk County Police Department for 17 years. Before that, plaintiff worked as a Mental Hygiene Therapy Aide for 12 years at Central Islip Hospital. Defendants argue that this level of education and experience "is sufficient to show that she had an understanding of the Agreement's terms." (Defendants' Letter Brief, dated September 26, 2008, at 3.) However, plaintiff has submitted an affidavit stating the following: (1) she has "never been trained in business, management, or the law;" (2) has "never held any kind of business-related employment or law-related employment;" and (3) has "never been a manager or supervisor in any work setting." (Drees Affidavit, at ¶¶ 3-5.) Thus, plaintiff argues that she "did not have sufficient business training or experience to have made a knowing and voluntary waiver." (Plaintiff's Letter Brief, dated October 24, 2008, at 3.) *See, e.g., Glugover v. Coca-Cola Bottling Co. of New York, Inc.*, No. 91 Civ. 6331 (PKL), 1993 WL 312269, at *9 (S.D.N.Y. Aug. 12, 1993) ("As for the first factor, although [plaintiff] has some college education, it is unclear whether she was sophisticated enough in business affairs to understand the terms of the release.")

### 2. The Amount of Time Plaintiff had Possession of or Access to the Agreement before Signing It

Defendants note that each release "specifically states that she had time for 'sufficient consultation.'" (Defendants' Letter Brief, dated September 26, 2008, at 3.) Plaintiff, however, in her affidavit asserts that she had five minutes or less to review boilerplate language presented to her:

> At no point was I given the opportunity, either directly or indirectly, to negotiate what terms and language would be in the stipulations. I was forced to sign off on the stock language which was presented to me by the County of Suffolk, my union, and their lawyers. I had five minutes or less to review the stipulations before I signed them.

(Drees Affidavit, at ¶ 6.)

### 3. The Role of the Plaintiff in Deciding the Terms of the Agreement

Defendants argue that "[a]ll agreements under Civil Service Law are long-negotiated agreements, involving at least, a union representative. The agreement is final only when all parties agree to its terms." (Defendants' Letter Brief, dated September 26, 2008, at 4.) As noted above, plaintiff argues that she "was not permitted to negotiate the terms of the stipulations she signed," and that they were "all prepared by the union and by the County of Suffolk and their lawyers, and contained boilerplate language with specific terms relevant to Plaintiff's settlements inserted." (Plaintiff's Letter Brief, dated October 24, 2008, at 3.) Therefore, plaintiff argues, she "had no choice with respect to what she was agreeing to." (*Id.*)

### 4. The Clarity of the Agreement

Defendants argue that the agreement was clear and unambiguous in that the 1997 and 1998 agreements state that "employee . . . agrees to waive any and all rights . . . arising from the allegations which are the subject of the stipulation," and the 2005 agreement states

5

"[e]mployee further agrees to waive any and all rights she may have pursuant to New York State Civil Service Law, Civil Practice Law, Article 78 and any other State or Federal statutory or case law . . . ." (Defendants' Letter Brief, dated September 26, 2008, at 2.) Further, defendants assert that plaintiff has admitted "that the agreement was explained to her by her union representative." (*Id.* at 4.)

Plaintiff contends that the agreements were not clear and unambiguous because they were written in legal terminology. For example, plaintiff notes that each release "includes language such as '[i]t does not act to prohibit the Employer from instituting any future proceedings involving other misdeeds as of yet unknown,' '[t]his stipulation contains the entire understanding of both parties in respect to the subject matter contained herein, superceded all prior oral or written agreements between the parties and merges all prior and contemporaneous discussions between them,' and 'only reserving the right to proceed against the County with respect to a breach of this stipulation in an arbitration proceeding.'" (Plaintiff's Letter Brief, dated October 24, 2008, at 2 (internal citations omitted).)

5. Whether Plaintiff was Represented by or Consulted with an Attorney

Defendants argue that plaintiff was represented by counsel and a union representative and that the 1997 and 1998 stipulations explicitly state that plaintiff had the opportunity to consult with counsel and that she entered into the agreements freely and voluntarily after sufficient consultation with counsel and union representatives. (Defendants' Letter Brief, dated September 26, 2008, at 5.) Plaintiff, however, argues that plaintiff was only represented by union counsel, which was not solely looking after plaintiff's interests and that "she did not have independent representation looking out for her best interests or ensuring that she fully understood the stipulations before she was forced to sign them." (Plaintiff's Letter Brief, dated October 24, 2008, at 4.) Further, plaintiff asserts in her affidavit that she was "never advised that she could or should seek her own counsel to ensure that her interests were protected." (Drees Affidavit, at ¶ 7.)

6. Whether the Consideration Given in Exchange for the Waiver Exceeds Employee Benefits to which the Employee was Already Entitled under Contract

Defendants assert that plaintiff avoided termination by signing the agreements and, therefore, "plaintiff received a benefit to which she was not otherwise entitled." (Defendants' Letter Brief, dated September 26, 2008, at 5.) Plaintiff, however, argues that "the stipulations make clear that Plaintiff gave up her right to a hearing on the disciplinary charges against her," and "[t]herefore, Plaintiff was not avoiding an imminent termination by signing the stipulations, but was waiving her right to have her penalties decided at a hearing." (Plaintiff's Letter Brief, dated October 24, 2008, at 5.) Plaintiff further argues that continued employment is nothing more than what she would have received under the collective bargaining agreement. (*Id.*) In her affidavit, plaintiff notes that she "received no additional benefit or pay for signing the release." (Drees Affidavit, at ¶ 8.)

After analyzing all of the factors, although certain evidence favors the defendants on this issue, plaintiff's affidavit raises sufficient issues of material fact regarding the *Bormann* factors to defeat defendants' motion for

summary judgment. The Court recognizes that it is not necessary that every factor be satisfied before a release can be enforced. *See Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991); *see also Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 10 (1st Cir. 2007) ("That one of the six factors tends to favor the appellants is not enough to tip the summary judgment balance; the law is clear that no single factor is determinative in evaluating whether a waiver is knowing and voluntary. It is sufficient to sustain the validity of a release and the enforceability of its terms, at the summary judgment stage, that the relevant circumstances point unerringly toward that result.") (internal citation omitted). Thus, summary judgment is appropriate where the *Bormann* factors weigh overwhelmingly in favor of defendants. *See, e.g., Tung v. Texaco, Inc.*, 150 F.3d 206, 208 (2d Cir. 1998) (affirming a district court's dismissal of plaintiff's claim because "[w]e agree that, under the totality-of-the-circumstances analysis, [plaintiff]'s waiver of his right to sue under Title VII was knowing and voluntary").

However, in the instant case, plaintiff has put forth evidence on a number of factors – including evidence regarding her lack of business experience, her review of the releases for five minutes or less, her lack of any role in deciding the terms of the agreement, the level of union involvement in the process, her lack of personal counsel during the process, and the lack of any additional benefits or pay for signing the releases – to support her position that the releases were not knowing and voluntary. Viewing this evidence in the light most favorable to plaintiff, this evidence is sufficient to create material issues of fact regarding the application of the *Bormann* factors to preclude summary judgment on this issue.[2] *See, e.g., Okoro v. Marriott Int'l, Inc.*, No. 07-CV-165 (DLC), 2007 WL 980429, at *2 (S.D.N.Y. Apr. 3, 2007) ("Summary judgment cannot be granted because [plaintiff] raises a genuine issue of material fact as to whether the waiver of rights in the Release was knowing and voluntary. . . . The [defendant] claims that [plaintiff] was represented by his union during the negotiation of the Release, but [plaintiff] disputes the level of union involvement throughout the process. The parties further dispute various aspects of the circumstances surrounding the signing of the Release. Summary judgment is therefore not appropriate at this early stage of the litigation."); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) ("Despite the fact that the majority of the *Bormann* factors favor a finding of a voluntary and knowing waiver, I cannot reject [plaintiff's] claim that she did not understand that she would be waiving her statutory rights to bring suit by signing the Release. . . . [Plaintiff's] evidence, consisting of her sworn affirmation as well as deposition testimony, presents a credibility issue which cannot be resolved on summary judgment."); *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine*, 833 F. Supp. 1089, 1097 (S.D.N.Y. 1993) ("In light of all of the[] factors, there are genuine issues of material fact to preclude granting summary judgment against plaintiff on the basis of the release."); *Glugover v. Coca-Cola Bottling Co. of New York, Inc.*, No. 91 Civ. 6331 (PKL),1993 WL 312269, at

---

[2] Given the disputed facts as applied to this case, the Court also concludes that summary judgment under the New York law standard, as related to the pendent state law claims, is also unwarranted on this issue.

7

*12 (S.D.N.Y. Aug. 12, 1993) (applying the *Bormann* factors and concluding that "by her testimony and accompanying evidence, and reasonable inferences to be drawn therefrom, [plaintiff] has created issues of fact concerning the validity of the release which preclude summary judgment in [defendant's] favor on this issue").

Accordingly, defendants' motion for summary judgment based upon the releases is denied.

### B. The Alleged 1991-1997 Conduct

Plaintiff asserts that she suffered from a hostile work environment based on gender. In connection with this claim, plaintiff relies on incidents from 1991 to 1997 when various sergeants allegedly made sexual comments to Drees and her female co-workers. However, as set forth below, those incidents are time-barred and do not come within the "continuing violation doctrine" as they are not part of one unlawful employment practice because (1) it is undisputed that the alleged harassment ceased completely in 1997 when several of these sergeants were transferred out of her precinct, and (2) the next alleged incident regarding a hostile work environment did not occur until 2004 when a Sergeant began reprimanding and criticizing her.

#### 1. Applicable Law

Prior to filing a Title VII claim in federal court, a plaintiff must institute proceedings with a state or local agency within 300 days. 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 108-09 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). These statutory filing periods are "analogous to [] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). This "statute" of limitations begins to run for each discrete discriminatory or retaliatory act when each act occurs. *See Morgan*, 536 U.S. at 114; *Hill*, 312 F. Supp. 2d at 472. Accordingly, claims for relief under Title VII that took place 300 days or more prior to June 8, 2005 would generally be time-barred. Therefore, for purposes of plaintiff's hostile work environment or retaliation claims, any discrete acts of discrimination or retaliation occurring *after* August 12, 2004 are timely.

#### 2. Application

Plaintiff contends that defendants' acts that took place prior to the statutory time period should also be considered by the Court as part of a "continuing violation" that created a hostile work environment at the Suffolk County Police Department ("SCPD") from 1991 through the present. As the Supreme Court held in *Morgan*, "the incidents comprising a hostile work environment are part of one unlawful employment practice," and, therefore, "the employer may be liable for all acts that are part of this single claim." 536

8

U.S. at 119. Accordingly, in the case of plaintiff's hostile work environment claim, "the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117). In connection with defendants' motion to dismiss, the Court held that it could not decide that issue at that early stage of the litigation because plaintiff was alleging a continuous hostile work environment from 1991 to 2005:

> [I]n the instant case, plaintiff has alleged that there was a continuous hostile work environment from 1991 until 2005. The Court recognizes that the Amended Complaint does not contain alleged acts of harassment during every year in that entire time frame and it may be that, after discovery in the instant case, plaintiff may be unable to prove that the timely incidents of harassment were sufficiently connected to the otherwise time-barred conduct to constitute a continuing violation. Nevertheless, at the motion to dismiss stage, the Court is unable to conclude that it will not be possible for plaintiff to prove such a continuing violation, given the detailed allegations contained in the complaint. Thus, at this juncture, the Court is considering the entire period in analyzing plaintiff's hostile work environment claim in conjunction with defendants' motion to dismiss. In any event, as noted *supra*, the claim is timely even in the absence of the pre-August 2004 conduct, because plaintiff has alleged conduct within the applicable statute of limitations.

*Drees v. County of Suffolk, et al.*, No. 06-CV-3298 (JFB) (ETB), 2007 WL 1875623, at *9 (E.D.N.Y. June 27, 2007).

However, at the summary judgment stage, the Court is permitted to look at plaintiff's evidence to determine whether, construing the evidence in the light most favorable to the plaintiff, a rational jury could find one continuous hostile work environment from the 1991-1997 period to the 2004-2005 period. The answer to that question is no. Plaintiff concedes that the alleged harassment stopped in 1997 when various sergeants were transferred and that there were no incidents whatsoever for at least 5 years later. Moreover, the incidents in 2004 and 2005 involved different supervisors and, even according to plaintiff, were based upon alleged retaliation for her protected activity (not gender).[3] In short, there is no evidentiary basis from which a rational jury could find a continuous hostile work environment from 1991 to 2005. Accordingly, the 1991-1997

---

[3] Although the complaint does allege one conversation with Sergeant Hanley in 2002 in connection with compensation time, that isolated conversation, although relevant on the issue of retaliation (as discussed *supra*), does not provide a basis for a continuing hostile work environment claim from the 1997 conduct.

9

conduct does not fall within the "continuing violation" doctrine and is time-barred under Title VII.[4]

However, as discussed *infra*, the Court must still consider whether there is sufficient evidence regarding plaintiff's retaliation claim – including a retaliatory hostile work environment claim – to proceed based upon the timely conduct in 2004 and 2005. The Court will now turn to that issue.

### C. Retaliation Claim

Plaintiff has asserted a retaliation claim based upon the following: (1) the demotion in October 2004 from dispatcher to 911 operator; (2) the disciplinary action taken against her in December 2004 and her subsequent demotion to switchboard operator, and then Detention Attendant in early 2005; and (2) a retaliatory hostile work environment in 2004 and 2005 based upon, among other things, excess scrutiny of her work, disciplinary charges, and reprimands. As set forth below, the Court concludes that there is sufficient evidence to preclude summary judgment on the retaliation claim.

### 1. Applicable Law

Title VII prohibits an employer from firing an employee in retaliation for having made a charge of discrimination. 42 U.S.C. § 2000e-3(a); *see also* N.Y. Exec. Law § 296(1)(e). To establish a *prima facie* case of retaliation, a plaintiff must show (1) she engaged in a protected activity; (2) defendant was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998); *see Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). An employment action is considered adverse if "the employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

A claim of retaliation is analyzed under the three-step burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Terry*, 336 F.3d at 141. Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee,

---

[4] The alleged conduct from 1991 to 1997 is also time-barred with respect to any claim under the NYHRL or Section 1983. Section 296 of the NYHRL permits lawsuits to be filed three years from the date of the injury allegedly caused by discrimination. *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). Likewise, with regard to plaintiff's Section 1983 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (Section 1983), *cert. denied*, 538 U.S. 922 (2003). Thus, the alleged conduct from 1991 to 1997 is also time-barred with respect to these claims.

whether or not it was the sole cause.'" *Terry*, 336 F.3d at 140-41 (internal citations omitted).

As noted above, it is well settled that if a retaliatory motive played a part in the adverse employment actions, even if it was not the sole cause, the law is violated. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citing *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986)); *De Cintio v. Westchester County Med. Ctr*, 821 F.2d 111, 116 n.8 (2d Cir. 1987). Likewise, if the employer was at all motivated by retaliatory animus, the law is violated even if there were objectively valid grounds for the adverse employment action. *Sumner*, 899 F.23d at 209. A plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *Id.*

Moreover, in addition to relying on discrete employment actions to prove retaliation, a plaintiff can also try to prove that a retaliatory hostile work environment existed. In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct.[5] *See, e.g.,* *Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."); *Faison v. Leonard St., LLC*, No. 08 Civ. 2192 (PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (same); *McWhite v. New York City Housing Authority*, No. CV 0991 (NG) (LB), 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008); *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable. The hostile work environment doctrine, as developed in the anti-discrimination jurisprudence of Title VII, embodies that prerequisite.") (citation

---

[5] As one court has noted, there is a question as to whether, after the Supreme Court's decision in *Burlington Northern*, the standard for showing a retaliatory hostile work environment is less than the standard for a traditional hostile work environment claim because for a retaliation claim a plaintiff need only show a "materially adverse action" rather than an "adverse employment action." *See Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03-CV-2411 (DGT), 2007 WL 1011325, at *9 (E.D.N.Y. Mar. 30, 2007) ("It is . . . unclear whether the Supreme Court's decision in *Burlington Northern*, 126 S.Ct. 2405, altered the standard for retaliatory hostile work environment claims."). In other words, if such a difference exists, a plaintiff could theoretically be subject to materially adverse actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern*, 126 U.S. at 77 (quotations and citations omitted), but not "sufficiently severe or pervasive," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986), to alter the conditions of plaintiff's employment. However, the possibility of this lower standard is not critical for the instant summary judgment motion because, as noted *infra*, plaintiff has set forth sufficient evidence to survive summary judgment under the normal Title VII standard as applied to a hostile work environment.

11

omitted); *Rigau v. Pfizer Caribbean Corp.*, 525 F. Supp. 2d 272, 287 (D.P.R. 2007) (same).

Thus, a plaintiff must demonstrate that his workplace is "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998)); *see Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Richardson v. N.Y. Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

The Second Circuit has held that there is no "magic" threshold number of harassing incidents that are required, as a matter of law, to demonstrate a hostile work environment. *See Richardson*, 180 F.3d at 439. Rather, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (citing *Harris*, 510 U.S. at 23); *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)).

2. Application

With respect to plaintiff's demotion in 2005 to Detention Attendant, it is undisputed that plaintiff engaged in protected activity in the mid-1990s, that her employer was aware of it, and that there was an adverse action in 2005 in the form of a demotion. Moreover, with respect to the earlier demotions in October 2004 to 911 operator and in December 2004 to switchboard operator, although defendants argue that neither of these demotions is an adverse action because of the lack of any reduction in pay or benefits, the Court concludes that the facts are sufficiently in dispute to preclude summary judgment on that basis. It is well settled that "[r]eassignment of job duties is not automatically actionable," and that the standard for making such a determination is objective, not subjective. *Burlington Northern*, 548 U.S. at 71. However, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (internal quotation marks omitted). Here, that fact-specific issue cannot be decided on summary judgment in defendants' favor with respect to the demotions in October 2004 and December 2004, when the evidence is construed in the light most favorable to plaintiff. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("[W]e have made clear that adverse employment actions are not limited to pecuniary emoluments. . . . Lesser actions such as negative employment evaluation letters may also be considered adverse. Therefore, if sufficiently linked to retaliatory animus, many of the actions taken by the Town could be considered unlawful

under this broad definition of adverse action.") (citations and quotations omitted).

Thus, the remaining issue is whether there is evidence of a causal connection between the protected activity and the adverse action. Based upon the evidence discussed below, the Court concludes that there is sufficient evidence on that issue for plaintiff to establish a *prima facie* case. Moreover, although defendants have articulated a legitimate, non-discriminatory basis for the demotion – namely, plaintiff's improper voiding of 911 calls – plaintiff has presented evidence that is sufficient to survive summary judgment as to whether a retaliatory motive played a part in the demotions.

As a threshold matter, the Court recognizes that many years separated plaintiff's protected activity in the 1990s and the alleged retaliation in 2004 and 2005 regarding the demotions. If a plaintiff is only attempting to rely on temporal proximity, although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03-CV-3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55-*56 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds*, *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

In the instant case, plaintiff has provided evidence to explain the long passage of time between the protected activity and the alleged retaliation. According to plaintiff, one of the individuals plaintiff accused of harassment in the 1990s, Sergeant Hanley, was transferred back to plaintiff's precinct in 2001 and made a statement to her that, if viewed in the light most favorable to plaintiff, suggested that Sergeant Hanley was attempting to find a way to retaliate against her. Specifically, according to plaintiff, on May 14, 2002, Lieutenant Hanley ("Lt. Hanley") allegedly berated Drees in front of several supervisors, accusing her of using her "comp time"[6] inappropriately as part of her bereavement leave following her father-in-law's death. (Compl. ¶ 28; Drees Dep. at 161-64.) When Drees denied misusing any of her comp time, Lt. Hanley called her a "liar" and stated: "I got you now, and when I get done with you, you will not even be working in McDonald's." (Drees Dep., at 162.) A review of Drees' requests for bereavement leave revealed that she had not misused her comp time. (Compl. ¶ 28; Drees Dep., at 162-63.) In July 2002, Lt.

---

[6] Time off accrued from overtime work. (Amended Complaint ("Compl.") ¶ 28.)

Hanley was promoted to Captain and was transferred out of Drees' precinct. (*Id.* ¶ 29.)

Despite being transferred out of the precinct again, plaintiff offers evidence that Captain Hanley returned to the precinct to make her current supervisors aware of her protected activity in order to encourage retaliation against her. Specifically, Drees asserts that on July 1, 2004, Captain Hanley (hereinafter "Cpt. Hanley") visited Drees' precinct and spoke with Sergeant Dacuk ("Sgt. Dacuk") and Lieutenant Mark Fischer ("Lt. Fischer"). (Compl. ¶ 30; Drees Dep., at 174-77.) According to Drees, Sgt. Dacuk was one of Drees' supervisors and had only worked in the department for six months at that time. (Compl. ¶ 30.) Drees asserts that Lt. Fischer was Sgt. Dacuk's close friend. (*Id.*) Prior to his conversation with Cpt. Hanley, Sgt. Dacuk had been friendly with Drees and had commended her work performance. (*Id.* ¶ 31; *see also* Drees Dep., at 174.) Following his conversation with Cpt. Hanley, Sgt. Dacuk stopped speaking to Drees altogether. (*Id.*) On July 19, 2004, Sgt. Dacuk verbally reprimanded Drees for the first time regarding one of her calls. (*Id.* ¶ 32; Drees Dep., at 169-170.) Although no problems were found with respect to the call, Sgt. Dacuk allegedly warned Drees that he would be checking her work very closely. (*Id.*)

According to plaintiff, on August 12, 2004, Sgt. Dacuk, Sergeant Munson, Sergeant Smith and Ms. Hubner, one of Drees' supervisors, insisted that Drees have a union representative present for a routine interview. (Compl. ¶ 33; Drees Dep., at 170-72..) Later, Drees was informed that the SCPD had believed that the presence of a union representative was necessary because Drees had considered filing a written charge of sexual harassment in 1997. (*Id.*) When Drees complained to her union about the SCPD's actions, she was informed that Sgt. Dacuk felt uncomfortable around Drees because he believed that she would press sexual harassment charges. (*Id.* ¶ 34; Drees Dep., at 177.) On October 20, 2004, Cpt. Hanley again visited Drees' precinct and spoke with Sgt. Dacuk. (Compl. ¶ 35; Drees Dep., at 177-78.) The next day, Drees was demoted two grade levels, from dispatcher to 911 operator. (Compl. ¶ 36; Drees Dep., at 178.) As Drees had not worked as a 911 operator for many years, she asked to be retrained, but her request was denied. (Compl. ¶ 36; Drees Dep., at 179.) Drees was told to "do the best she could." (*Id.*)

According to plaintiff, immediately after learning of the demotion, Drees complained to Lt. O'Callaghan, stating that the demotion was in retaliation for her complaints of sexual harassment and retaliation. (*Id.* ¶ 37.) Drees also told Lt. O'Callaghan about Cpt. Hanley's conversations with Sgt. Dacuk, and stated that she believed Sgt. Dacuk had been informed of her previous complaints of sexual harassment and retaliation. (*Id.* ¶ 37; Drees Dep., at 184-85.) According to Drees, Lt. O'Callaghan agreed that the SCPD's actions were in retaliation for Drees' past complaints. (*Id.*; Drees Dep., at 186.) Specifically, at her deposition, plaintiff testified as follows regarding her conversation with Lt. O'Callaghan in 2004:

Q. What did you explain?
A. I explained to her [*i.e.*, Lt. O'Callaghan] that Hanley came up to headquarters; that Sergeant Dacuk found out about the harassment charges; and that I was getting disciplined and put on ECO. I explained to her the whole situation and how Sergeant Dacuk brought up

14

the sexual harassment charges, and that there was no one else in that building that knew about it except for Hanley.

* * *

Q. What did she say?
A. She [Lt. O'Callaghan] said that it sounds like retaliation and that she would look into it and speak to the Captain.

(Drees Dep., at 185-86.)

In his deposition, Sgt. Dacuk acknowledged that, after the initial stages of his investigation into the voided calls by plaintiff, he did learn from Cpt. Hanley that Cpt. Hanley had a similar problem with plaintiff at some earlier time. (Dacuk Dep., at 32-33.) Moreover, Sgt. Dacuk was advised by his supervisor, Lt. Fisher, that "Ms. Drees had had problems in the past or concerns about being sexually harassed" and directed Sgt. Dacuk that "for her protection and for all supervisors' protection, any further conversations with Ms. Drees were to be of a work-related manner only and any private conversations would be in the presence of a union representative." (*Id*. at 28.) Sgt. Dacuk further testified that Cpt. Hanley had no involvement in the decision-making regarding plaintiff. (*Id.* at 32-33.)

Although defendants have presented evidence to support their non-discriminatory reason for the demotion, the Court must view the evidence in the light most favorable to plaintiff, including giving her the benefit of all reasonable inferences from such evidence. Under that standard, the evidence proffered by plaintiff suggesting that plaintiff's demotions were in part motivated by retaliation for her prior protected activity is sufficient to create a material issue of disputed fact on the question of pretext that survives summary judgment.[7]

Similarly, plaintiff has also proffered sufficient evidence regarding a retaliatory hostile work environment in 2004 and 2005 to survive summary judgment. According to plaintiff, following her conversation with Lt. O'Callaghan in 2004, Sgt. Dacuk and Ms. Hubner allegedly "overscrutinized" Drees and reprimanded her for actions that had not raised a concern prior to her meeting with Lt. O'Callaghan. (*Id.* ¶ 38.) According to Drees, Sgt. Dacuk and Ms. Hubner also reprimanded Drees for actions that they did not criticize when performed by Drees' colleagues who had not made complaints about sexual harassment or retaliation. (*Id.*) Each time that Drees was reprimanded, her requests to be re-trained were denied. (*Id.*) The Court concludes that the evidence is sufficient, when considered in light of the other evidence discussed *supra* – to survive summary judgment on the issue of retaliatory hostile work environment in 2004 and 2005.

Accordingly, summary judgment on plaintiff's retaliation claim under Title VII is

---

[7] To the extent that defendants also suggest that summary judgment on any retaliation claim is appropriate based on the affirmative defense enunciated simultaneously in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998), the Court disagrees. The *Faragher/Ellerth* affirmative defense has no application in analyzing an employer's direct liability for its own actions – such as a demotion – allegedly in response to the employee's protected activity. Thus, summary judgment could not be granted on such ground.

denied.[8]

### D. State Law Claims

Defendants contend that plaintiff's pendent state law claims that survived the motion to dismiss – namely, the NYHRL claims against the individual defendants – should be dismissed as untimely. Specifically, defendants argue that, pursuant to County Law Section 52 and General Municipal Law Section 50-e, which applies to suits against the County or its officials, plaintiff had to file her claim within one year and ninety days of the alleged conduct, and failed to do so in the instant case. In her opposition papers, plaintiff did not respond to this argument or provide any legal or factual basis for overcoming this timeliness issue. As set forth below, the Court concludes that summary judgment on this issue in defendants' favor is warranted.

As noted above, because plaintiff failed to respond in any way to defendants' motion for summary judgment on the state law claims on timeliness grounds, those claims could be deemed to be abandoned and/or withdrawn, and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim) (citing *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)); *see also DeVito v. Barrant*, No. 03 Civ. 1927 (DLI) (RLM), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00 Civ. 9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

---

[8] For the reasons that summary judgment on the retaliation claim under Title VII is denied, that claim under Section 1983 is also denied. "In order to state a claim for retaliation under section 1983, a plaintiff must show that : (1) his actions were protected by the Constitution or federal law; and (2) 'the defendant's conduct complained of was in response to that protected activity.'" *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (quoting *Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 1999)). Based upon the evidence outlined in connection with the Title VII retaliation claim above, the Court also concludes that the claim for retaliation under Section 1983 also survives summary judgment, including the Section 1983 claim against the individual defendants and against the County for municipal liability under *Monell*. Specifically, as to *Monell*, construing the above-referenced evidence in the case most favorably to the plaintiff, the issue of whether there was such a failure to train its employees to protect against the alleged constitutional violation, if it is found to exist, cannot be resolved by summary judgment. However, the Court agrees with the County that no punitive damages can be sought against it under Section 1983. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Nevertheless, in an abundance of caution, the Court has considered the substance of defendants' motion and agrees that the state claims must be dismissed on timeliness grounds. The one year and ninety day limitations period under Section 50-e is applicable to the individual defendants in this case because they are all employees of the County. *See Mills v. County of Monroe*, 59 N.Y.2d 307 (N.Y. 1983); *Freudenthal v. County of Nassau*, 283 A.D.2d 6 (N.Y. App. Div. 2001); *accord Geslak v. Suffolk County*, No. 06-CV-251 (NGG) (AKT), 2008 WL 620732, at *2 (E.D.N.Y. Mar. 5, 2008); *Pustilnik v. Hynes*, 2000 U.S. Dist. LEXIS 8718 (E.D.N.Y. June 27, 2000). In the instant case, the complaint was filed on July 7, 2006 and, thus, any acts occurring before April 7, 2005 are beyond the applicable statute of limitations. Here, the last actionable allegation occurred in March 2005. Thus, nothing is alleged to have occurred within the applicable statute of limitations period. Moreover, there is no tolling of the statute of limitations during the time plaintiff's claim was pending in State Division because of her self-initiated discontinuance of her State Division action for administrative convenience. *See Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879 (2d Cir. 1995); *Geslak*, 2008 WL 620732, at *3; *Kordich v. Povill*, 244 A.D.2d 112 (N.Y. App. Div. 1998). Accordingly, because the state claims are untimely, summary judgment in defendants' favor is warranted on such claims.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted as to the alleged conduct in 1991-1997 that forms the basis for plaintiff's hostile work environment claim based on gender under Title VII and Section 1983, and New York State law. However, the defendants' motion is denied as to the retaliation claims under those same statutes based upon the alleged conduct in 2004 and 2005. Finally, the defendants' motion for summary judgment on the state law claims is granted.[9]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2009
Central Islip, New York

\* \* \*

The attorneys for the plaintiff are Becky Tung, Esq. of WDF, Inc., 30 North Macquesten Parkway, Mount Vernon, NY 10550, and Rick Ostrove, Esq., Matthew Porges, Esq. and Thomas Ricotta, Esq. of Leeds Morelli & Brown, One Old Country Road, Suite 347, Carle Place, NY 11514. The attorneys for the defendants are Thomas J. Spota, Suffolk County District Attorney, by Jennifer K. Siegel, Esq. and Leonard G. Kapsalis, Esq., Suffolk County Attorney's Office, H. Lee Dennison Building, 5th Floor, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788-4311.

---

[9] As noted in the Court's prior Memorandum and Order, plaintiff has urged that the Court allow the time-barred conduct as "background evidence" in support of her timely retaliation. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (citing *Morgan*, 536 U.S. at 113, and *Petrosino v. Bell Atl.*, 385 F.3d 210, 220, 226 (2d Cir. 2004)). The Second Circuit has stated that "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation [or discrimination] involved, may be considered to assess liability on the timely alleged act." *Jute*, 420 F.3d at 176-77 (citations omitted) (holding that district court, by failing to consider time-barred acts of retaliation which, although not actionable, "might nonetheless remain admissible at trial and could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts," had erroneously concluded that plaintiff could not establish a *prima facie* case); *see also Petrosino*, 385 F.3d at 220 ("[E]vidence of earlier promotion denials may constitute relevant 'background evidence in support of a timely claim.'"); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988) (finding that, while a decisionmaker's statements indicating racial bias "standing alone, occurring as they did over five years before the [adverse employment action], could not suffice to uphold a finding [of discrimination], they do add support, in combination with the other evidence, to the ultimate conclusion"), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, codified in 42 U.S.C. § 1981(b), *as recognized in Linsalata v. Tri-State Gen. Ins., Ltd.*, No. 92-0596 (ABB), 1992 U.S. Dist. LEXIS 19665, at \*3-\*4 (E.D. Pa. Dec. 17, 1992). The Court, however, declines to address this evidentiary issue at this juncture and will defer such issue, until after it has received additional briefing by the parties regarding the issue of the admissibility of any time-barred acts as background evidence.